IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRAD BLAIR<br>2516 Hess Avenue<br>Wheeling, West Virginia 26003,<br><br>     Plaintiff,<br><br>    v.<br><br>APPALACHIAN PARTNERSHIP, INC.<br>35 Public Square<br>Nelsonville, Ohio 45764<br><br>  **Serve Also:**<br>  Appalachian Partnership, Inc.<br>  c/o OSAC, Inc.<br>  100 S. Third Street<br>  Columbus, Ohio 43215<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Brad Blair, by and through undersigned counsel, as his Complaint against Defendant Appalachian Partnership, Inc. ("API"), states and avers the following:

### PARTIES AND VENUE

1. Blair is a resident of the city of Wheeling, Ohio County, West Virginia.

2. At all times herein, Blair was acting in the course and scope of his employment.

3. API is a domestic corporation, incorporated under the laws of Ohio.

4. API's principal place of business is located at 35 Public Square, Nelsonville, Athens County, Ohio 45764.

5. For the purposes of 28 U.S.C. § 1332, API is a citizen of Ohio.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

7. All material events alleged in this Complaint occurred in Athens County, Ohio.

8. This Court has jurisdiction over Blair's state law claims pursuant to 28 U.S.C. § 1332.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

10. In or about March 2017, Blair began working for API as a contracted consultant.

11. In or about June 2017, Blair became a permanent employee of API.

12. API initially employed Blair as executive vice president.

13. In or about September 2020, API promoted Blair to president and CEO of its subsidiary, Appalachian Growth Capital ("AGC").

14. In or about September 2020, Glenda Bumgarner became president of API.

15. In or about January 2021, Bumgarner took money from AGC's operating account to place it into API's general funding ("Moving of Money").

16. In or about January 2021, Blair learned about the Moving of Money.

17. AGC received grants from federal entities, including the Appalachian Regional Commission, the U.S. Department of Agriculture, and the Community Development Financial Institutions Fund.

18. The federal grants AGC received restricted API's ability to take funding from AGC for other purposes.

19. The Moving of Money violated federal rules for grant recipients.

20. Blair reasonably believed that the Moving of Money violated federal rules for grant recipients.

21. Bumgarner knowingly violated federal rules for grant recipients.

22. Blair reasonably believed that Bumgarner knowingly violated federal rules for grant recipients.

23. Blair reasonably believed that the Moving of Money constituted a felony.

24. In or about January 2021, Blair told Bumgarner that he objected to the Moving of Money.

25. In or about January 2021, Blair told Bumgarner that he believed the Moving of Money violated federal grant rules.

26. Bumgarner did the Moving of Money despite Blair's objections.

27. Blair complained to Bumgarner verbally about the Moving of Money.

28. Blair complained to Bumgarner in writing about the Moving of Money.

29. On or about February 2, 2021, Blair informed John Molinaro about the Moving of Money.

30. Molinaro was a board member of AGC and past President/CEO of API and AGC.

31. On or about February 2, 2021, Blair told Molinaro that he objected to the Moving of Money.

32. On or about February 2, 2021, Blair told Molinaro that he believed the Moving of Money violated federal grant rules.

33. Blair complained to Molinaro verbally about the Moving of Money.

34. Blair complained to Molinaro in writing about the Moving of Money.

35. On or about February 2, 2021, Molinaro told Blair to contact Bryan Stepp.

36. Stepp was a member of API's board of directors and AGC's board of members.

37. On or about February 2, 2021, Blair reported the Moving of Money to Stepp.

38. On or about February 2, 2021, Blair told Stepp that he objected to the Moving of Money.

39. On or about February 2, 2021, Blair told Stepp that he believed the Moving of Money violated federal grant rules.

40. Blair complained to Stepp verbally about the Moving of Money.

41. Blair complained to Stepp in writing about the Moving of Money.

42. On or about February 4, 2021, Blair and Bumgarner spoke by phone ("February 4 Call").

43. In the February 4 Call, Blair told Bumgarner that he complained to Stepp about the Moving of Money.

44. In the February 4 Call, Blair told Bumgarner that he objected to the Moving of Money.

45. In the February 4 Call, Blair told Bumgarner that he believed the Moving of Money violated federal grant rules.

46. On or about February 4, 2021, API terminated Blair's employment ("Termination").

47. Bumgarner informed Blair about the Termination in the February 4 Call.

48. Bumgarner informed Blair about the Termination after he told her that he complained to Stepp about the Moving of Money.

49. In the February 4 Call, Bumgarner did not state a reason for the Termination.

50. On or about February 9, 2021, MarJean Kennedy sent the following email to Blair:

    Brad,

    As Chair of the API board, it is my duty to provide you with this formal letter of separation. API takes the allegations made in your email dated Feb 4 very seriously and has engaged external council to conduct a full investigation into the matter. The investigator will be in touch to discuss.

    Please reach out to Jane Dunnington with any questions you may have in regard to the transition process.

51. Kennedy is Chair of the API board.

52. When Kennedy referred to Blair's "email dated Feb 4," she was referring to Blair's complaints about the Moving of Money.

53. On or about February 4, 2021, Molinaro wrote an email to AGC's board members ("Molinaro's Email").

54. Molinaro's Email stated, in part:

> I do not believe that Brad's firing is a valid action. The attached AGC Operating Agreement, which provides the legal basis for AGC's operations, vests the authority to hire the "Executive Vice President" with AGC's Board of Managers and gives API's Board of Directors (by majority vote) and not its President the right to overrule AGC's Board. In addition, Brad is subject to an employment contract approved by both API's and AGC's boards. I do not believe that he can be fired by Glenda without AGC or API Board action.
>
> In addition, Glenda's action came when Brad, through Brian Stepp AGC's representative on API's board, took the step of expressing concern about potentially inappropriate or illegal conduct. He questioned:
> - Whether API can legitimately strip AGC of the cash generated from its operations that is pledged in its various grant agreements to match Federal grant awards, and
> - Whether it is appropriate, in light of Federal Regulations (2CFR200) governing nonprofit grants and contracts, for API to charge AGC an administrative fee far in excess of that charged to its other programs.
>
> Yesterday Brad contacted me and expressed this concern and indicated that Glenda would not talk to him about these issues. I advised that he contact Brian Stepp whose dual role as both an AGC and API board member is specifically designed to provide the proper channel to address conflicts that may arise between the parent organization and its subsidiary.
>
> Since Brad was using proper channels to express concern about the propriety of an action taken by someone in a position of authority related to AGC, I believe that Brad's actions are covered by the whistle-blower protections applicable to Federal Grants, which prohibit retaliation and require independent investigation by a grantee's Board of Directors when such concerns are raised and involve the grantee's CEO. In addition, Section 2 of API's Procurement Policies for Federal Grants (attached) outline the procedure to be followed in circumstances like these. It reads:

55. API has a progressive disciplinary policy ("Discipline Policy").

56. A verbal warning is the lowest level of discipline in the Discipline Policy.

57. Blair did not receive a verbal warning before the Termination.

58. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

59. Blair did not receive a written warning before the Termination.

60. A termination is the highest level of discipline in the Discipline Policy.

61. API knowingly skipped progressive disciplinary steps in terminating Blair.

62. API knowingly terminated Blair's employment.

63. API knowingly took an adverse employment action against Blair.

64. API knowingly took an adverse action against Blair.

65. API intentionally skipped progressive disciplinary steps in terminating Blair.

66. API intentionally terminated Blair's employment.

67. API intentionally took an adverse employment action against Blair.

68. API intentionally took an adverse action against Blair.

69. API knew that skipping progressive disciplinary steps in terminating Blair would cause Blair harm, including economic harm.

70. API knew that terminating Blair would cause Blair harm, including economic harm.

71. API willfully skipped progressive disciplinary steps in terminating Blair.

72. API willfully terminated Blair's employment.

73. API willfully took an adverse employment action against Blair.

74. API willfully took an adverse action against Blair.

75. On or about February 4, 2021, API terminated Blair's employment because he complained about the Moving of Money.

76. On or about February 4, 2021, API terminated Blair's employment because he reported conduct that he reasonably believed violated federal grant rules.

77. On or about February 4, 2021, API terminated Blair's employment because he reported conduct that he reasonably believed was a felony.

78. As a direct and proximate result of API's conduct, Blair suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT I: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52**

79. Blair restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

80. In or about January 2021, Blair complained to Bumgarner about the Moving of Money.

81. Blair complained to Bumgarner verbally about the Moving of Money.

82. Blair complained to Bumgarner in writing about the Moving of Money.

83. On or about February 2, 2021, Blair complained to Molinaro about the Moving of Money.

84. Blair complained to Molinaro verbally about the Moving of Money.

85. Blair complained to Molinaro in writing about the Moving of Money.

86. On or about February 2, 2021, Blair complained to Stepp about the Moving of Money.

87. Blair complained to Stepp verbally about the Moving of Money.

88. Blair complained to Stepp in writing about the Moving of Money.

89. On or about February 4, 2021, Blair complained to Bumgarner about the Moving of Money.

90. Blair reasonably believed that the Moving of Money violated federal grant rules.

91. Blair reasonably believed that Bumgarner knowingly violated federal grant rules.

92. Blair reasonably believed that Bumgarner intentionally violated federal grant rules.

93. Blair reasonably believed that Bumgarner willfully violated federal grant rules.

94. Blair reasonably believed that the Moving of Money was a felony.

95. Blair gave API an opportunity to cure the reported misconduct.

96. API retaliated against Blair by terminating his employment based on his complaints regarding this conduct.

97. API's termination of Blair was in violation of R.C. § 4113.52.

98. As a direct and proximate result of API's conduct, Blair suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Blair respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i)    Requiring API to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring API to restore Blair to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Blair for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Blair claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Brad Blair*

## JURY DEMAND

Plaintiff Blair demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)